IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MT. HAWLEY INSURANCE COMPANY, § § § **Plaintiff,** § § v. § § HCS 410 HOLDINGS, LLC D/B/A § TRAVELODGE § § **Defendant.** | CIVIL ACTION NO. 5:19-cv-780 JURY |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Mt. Hawley Insurance Company ("Mt. Hawley") files this Original Complaint for Declaratory Relief against Defendant HCS 410 Holdings, LLC d/b/a Travelodge ("HCS"), and alleges:

## I.
## PARTIES

1. At all times relevant hereto, Mt. Hawley was an insurance company organized under the laws of the State of Illinois, maintaining its principal place of business at 9025 North Lindbergh Drive in Peoria, State of Illinois. Thus, Mt. Hawley is a citizen of the State of Illinois, and is not a citizen of the State of Texas.

2. At all times relevant hereto, HCS was a limited liability company organized under the laws of the State of Texas, maintaining its principal place of business at 4801 Northwest Loop 410 Suite 530, San Antonio, Texas 78229. Its members and managers are Pratik Patel, Anand Bhakta and Kirit Parmar, all of whom are individuals who are residents and citizens of Texas. Thus, HCS is a citizen of the State of Texas, but not the State of Illinois. Defendant HCS may be

served through its registered agent, Kirit Parmar at 2838 Northeast Loop 410, Suite 270, San Antonio, Texas 78217, or wherever he may be found.

## II.
## JURISDICTION AND VENUE

3.  This is an action for declaratory relief pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §2201.

4.  The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §1332(a)(1). There exists complete diversity of citizenship and the amount in controversy exceeds $75,000.00, excluding interest, attorney's fees, and costs.

5.  Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) and (2), because it is the judicial district in which HCS maintains its place of business, and it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

6.  Declaratory relief is proper regarding the subject matter of this action because there is an actual controversy between the parties. By this action, Mt. Hawley seeks a declaration as to the rights and obligation under an insurance policy issued by Mt. Hawley to HCS in connection with a claim for insurance benefits arising from storm damage to a property owned by HCS generally known as the Travelodge Inn & Suites located at 2328 NE Interstate 410 Loop, San Antonio, Texas 78217 (the "Property"). The dispute involves issues regarding whether HCS has breached certain provisions of the policy, whether an appraisal award should be disregarded and set aside, and/or alternatively, the amount, if any, that Mt. Hawley is required to pay based on the terms of the insurance policy at issue. Under Title 28 U.S.C. §2201, this Court has the power to declare obligations and duties of the parties and to give such other relief as may be necessary.

## III.
## GENERAL ALLEGATIONS

7. On June 2, 2016, HCS notified Mt. Hawley of a claim for hail damage to the Property under a Commercial Property Policy, No. MCP0163611, issued by Mt. Hawley to the HSC with a policy period of July 9, 2015 to July 9, 2016 (the Policy). A true and correct copy of the Policy is attached hereto as Exhibit "A." Mt. Hawley assigned an independent adjuster and professional engineer to evaluate the claim and made an undisputed actual cash value loss payment to HCS of $466,234.34 on November 30, 2016. This payment was based on the estimate of loss totaling $708,171.54, less the Policy deductible and depreciation.

8. HCS was not satisfied with the undisputed payment and made a demand for appraisal of the loss as provided by the Policy. Pursuant to the Policy, Mt. Hawley and HCS each selected an appraiser who, in turn, selected an Umpire who was to make a determination as to the amount of loss in the event the selected appraisers failed to agree.

9. As part of the appraisal process, the appraisers submitted their respective estimates of value but no agreement between them was reached. The matter was, therefore, submitted to the Umpire. During the appraisal process, however, Mt. Hawley discovered that repairs at the Property had been completed, but no information or documentation regarding the actual cost of the completed repairs had been submitted to Mt. Hawley, the appraiser appointed by Mt. Hawley or the Umpire. This information was necessary in order to determine the actual amount of the loss and the amount recoverable, if any, under the Policy. The Policy specifically provides that Mt. Hawley will not pay more for a loss or damage on a replacement cost basis than the least of the following: (1) the Limit of Insurance applicable to the lost or damaged property; (2) the cost to replace the lost or damaged property subject to certain stipulations; or (3) <u>the amount actually spent that is necessary to repair or replace the lost or damaged property</u>.

10. Mt Hawley made repeated requests in writing for the necessary documentation to the appraiser appointed by HCS and eventually to HCS itself, all to no avail. On May 2, 2019, Mt. Hawley again requested in a letter to HCS that HCS provide documentation concerning HCS's incurred repair costs including any contracts for services, repair bills, invoices for materials and labor, cancelled checks and any additional information HCS wished to provide for Mt. Hawley's consideration.

11. After receiving a copy of the above referenced letter reiterating Mt. Hawley's request for the necessary documentation, the appraiser appointed by Mt. Hawley advised the Umpire by email on May 2, 2019, that he agreed with Mt. Hawley's position that HSC must cooperate and provide the requested repair cost documentation for review by the appraisal panel. He further advised the Umpire that it would be premature for the panel to finalize an appraisal award in light of the formal request for the necessary documentation.

12. On May 15, 2019, the appraiser appointed by Mt. Hawley followed up with another email to the Umpire asking whether the Umpire agreed that the appraisal panel should await receipt and review of the repair cost documentation requested by Mt. Hawley before developing an award. By return email that same day, the Umpire responded, "Yes I agree."

13. On May 20, 2019 HCS provide additional documents to Mt. Hawley, but the additional documentation provided was incomplete and vague regarding the scope of repairs completed and did not include copies of checks purportedly documenting repair costs. Mt. Hawley advised HCS of these continuing deficiencies by letter dated May 23, 2019.

14. Despite the fact that the necessary documentation regarding completed repairs was never provided by HCS, and despite the fact that the Umpire had agreed that any appraisal award would be premature without this necessary documentation, the Umpire issued an award on June 3,

2019, finding a total amount of loss in the amount of $1,350,000.000 and the actual case value of the loss to be $1,010,450.00 ("the "Appraisal Award"). A copy of the Appraisal Award is attached hereto as Exhibit "B." Despite objection by the appraiser appointed by Mt. Hawley, the appraiser appointed by HCS agreed to the Appraisal Award and the Umpire advised that his participation in the matter had ended.

## IV.
## THE TERMS OF THE MT. HAWLEY POLICY

15. The following provisions of the Policy are relevant to the issues presented in this matter:

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

. . . . .

    2.    **Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

    a.    Pay its chosen appraiser; and

    b.    Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

    3.    **Duties In The Event Of Loss Or Damage**

    a.    You must see that the following are done in the event of loss or damage to Covered Property:

    (1)    Notify the police if a law may have been broken.

    (2)    Give us prompt notice of the loss or damage. Include a description of the property involved.

    (3)    As soon as possible, give us a description of how, when and where the loss or damage occurred.

    (4)    Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the

        settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

    (5)    At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claim.

    (6)    As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

        Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

    (7)    Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

    (8)    Cooperate with us in the investigation or settlement of the claim.

    b.    We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4.**    **Loss Payment**

    a.    In the event of loss or damage covered by this Coverage Form, at our option, we will either:

    (1)    Pay the value of lost or damaged property;

    (2)    Pay the cost of repairing or replacing the lost or damaged property, subject to b. below;

    (3)    Take all or any part of the property at an agreed or appraised value; or

    (4)    Repair, rebuild or replace the property with other property of like kind and quality, subject to b. below.

    We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**G.**    **Optional Coverages**

    . .    .    .    .    .

**3.**    **Replacement Cost**

    a.    Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

  b.  This Optional Coverage does not apply to:

    (1)  Personal property of others;

    (2)  Contents of a residence;

    (3)  Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-abrac; or

    (4)  "Stock", unless the Including "Stock" option is shown in the Declarations.

    Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

  c.  You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

  d.  We will not pay on a replacement cost basis for any loss or damage:

    (1)  Until the lost or damaged property is actually repaired or replaced; and

    (2)  Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

    (3)  If the conditions in d.(1) and d.(2) above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

    (4)  We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

  e.  We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2) or (3), subject to f. below:

    (1)  The Limit of Insurance applicable to the lost or damaged property;

    (2)  The cost to replace the lost or damaged property with other property:

      (a)  Of comparable material and quality; and

      (b)  Used for the same purpose; or

    (3)  The amount actually spent that is necessary to repair or replace the lost or damaged property.

      If a building is rebuilt at a new premises, the cost described in e.(2) above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

  f.  The cost of repair or replacement does not include the increased cost

attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**COMMERCIAL PROPERTY CONDITIONS**

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this Coverage Part.

## V.
## CLAIM FOR RELIEF – DECLARATORY JUDGMENT

16. Mt. Hawley re-alleges and incorporates by reference the allegations above.

17. By virtue of the foregoing, there exists an actual, justiciable controversy between the parties.

18. Mt. Hawley seeks a declaratory judgment that HCS has breached the Policy by failing to cooperate with Mt. Hawley in providing the necessary documentation to investigate the claim as set forth above and/or by concealing such information. and requiring HCS to provide complete documentation of incurred cost to repair the property damage that is the subject of the above described claim.

19. Pleading further, and/or in the alternative, Mt. Hawley seeks a declaration that HCS is required to provide complete documentation of incurred costs to repair the property damage that is the subject of the above described claim.

20. Pleading further, and/or in the alternative, Mt. Hawley seeks a declaration that the Appraisal Award is disregarded, set aside and void because it was made without authority, was the result of fraud, accident, or mistake, and/or was not made in substantial compliance with the terms of the contract for the reasons set forth above.

21. Pleading further and/or in the alternative, Mt. Hawley seeks a declaratory judgment as to the amount recoverable under the Policy, if any, for the claim described above after application of the above referenced terms of the Policy.

## VI.
## JURY DEMAND

22. Mt. Hawley hereby requests that this civil action be tried before a jury.

## VII.
## PRAYER

WHEREFORE, for the foregoing reasons, Plaintiff Mt. Hawley Insurance Company respectfully requests a declaratory judgment as follows:

1. HCS has breached the Policy by failing to cooperate with Mt. Hawley in providing the necessary documentation to investigate the claim as set forth above and/or by concealing such information. and requiring HCS to provide complete documentation of incurred cost to repair the property damage that is the subject of the above described claim; and/or

2. HCS is required to provide complete documentation of incurred costs to repair the property damage that is the subject of the above described claim; and/or

3. The Appraisal Award is disregarded, set aside and void because it was made without authority, was the result of fraud, accident, or mistake, and/or was not made in substantial compliance with the terms of the contract; and/or

4. A declaratory judgment as to the amount recoverable under the Policy, if any, for the claim described above after application of the above referenced terms of the Policy;

5. Such other and further relief to which Mt. Hawley may show itself justly entitled.

Dated: July 3, 2019

        Respectfully submitted,

        */s/ Greg K. Winslett*
        GREG K. WINSLETT
        State Bar No. 21781900
        RICHARD L. SMITH, JR.
        State Bar No. 18671200
        MICHAEL D. FEILER
        State Bar No. 24055475
        QUILLING, SELANDER, LOWNDS,
           WINSLETT & MOSER, P.C.
        2001 Bryan Street, Suite 1800
        Dallas, Texas 75201
        (214) 871-2100 (Telephone)
        (214) 871-2111 (Telefax)
        gwinslett@qslwm.com
        rsmith@qslwm.com
        mfeiler@qslwm.com

        **ATTORNEYS FOR PLAINTIFF**
        **RLI INSURANCE COMPANY**